IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RCT GROWTH PARTNERS L.L.C. and COMMERCIAL FUNDING GROUP, L.L.C., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-14-2242 |
| QUAD OCEAN GROUP LIMITED and JAMIE THOMPSON | § § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

Two Texas companies, RCT Growth Partners, LLC ("RCT") and Commercial Funding Group, LLC ("Commercial Funding"), sued Quad Ocean Group Limited ("Quad"), a Canadian company, and Jamie Thompson, a Canadian lawyer, alleging Texas state-law breach of contract and tort claims. The lawsuit arises from a contract that RCT and Commercial Funding entered into with Quad to obtain financing for various business transactions. Under the contract, the Texas companies deposited $350,000 in an escrow account for Thompson to manage as Quad's escrow agent. RCT and Commercial Funding allege that Quad failed to issue the promised financing and that Thompson released the $350,000 deposit to Quad without giving RCT and Commercial Funding notice or obtaining their authorization.

When Quad and Thompson failed to answer this lawsuit, RCT and Commercial Funding moved for entry of default and default judgment, which this court granted. (Docket Entry Nos. 15, 18). Thompson has moved to set aside the default and default judgment and to dismiss the claims against him for lack of personal jurisdiction and insufficient process. (Docket Entry No. 19). Based

1

on careful review of the motion, response, and reply; the parties' submissions; and the applicable law, this court grants Thompson's motion to set aside the default judgment and to dismiss him as a defendant for lack of personal jurisdiction. The reasons are explained below. The court also sets a September 21, 2015, deadline for RCT and Commercial Funding to file a submission showing why default judgment against Quad should not be set aside and the claims against it dismissed as well.

## I. Background

RCT and Commercial Funding are limited-liability companies headquartered in Houston, Texas. Both wanted financing, RCT for a real-estate project, and Commercial Funding, for a commodity transaction. On August 30, 2012, they entered into contracts with Quad to secure the funds. Quad was to distribute the money when RCT deposited $250,000 and Commercial Funding deposited $100,000 in an escrow account. The parties' escrow agreement specified that the escrow account would be at TD Canada Trust; that Thompson would serve as the escrow agent; that he could be contacted at an address in Ontario, Canada; and that the agreement "shall be governed by and construed in accordance with the laws of the Province of Ontario." (Docket Entry 22, Ex.1-A). RCT wired the total amount—$350,000—from its bank in Texas to the escrow account in Canada. (Docket Entry No. 22, Ex. 1-C). RCT and Commercial Funding allege that they never received the financing Quad promised them in return. They also allege that Thompson released their $350,000 deposit to Quad without notice or obtaining their authorization.

In early 2014, RCT and Commercial Funding, represented by counsel, demanded the return of the $350,000. After email exchanges with counsel for RCT and Commercial Funding, Thompson promised that Quad would return the money by June 20, 2014. (Docket Entry No. 22, Ex. 2; Docket Entry 22, Ex. 1-D). RCT and Commercial Funding allege that Quad failed to do so.

The plaintiffs' August 5, 2014, complaint asserts state-law claims for breach of contract, promissory estoppel, money had and received, conversion, deceptive trade practices, breach of fiduciary duty, fraud, negligence, and negligent misrepresentation. (Docket Entry No. 1). RCT and Commercial Funding sought damages and attorneys' fees.

The defendants were served with summons and the complaint, (Docket Entry No. 9; Docket Entry No. 10), but failed to answer. The plaintiffs moved for entry of default, which this court granted, (Docket Entry Nos. 14, 15). RCT and Commercial Funding then moved for default judgment. (Docket Entry No. 16). This court granted the motion and awarded RCT and Commercial Funding $350,000 in damages, $1.4 million in exemplary damages, and $8,424.10 in attorneys' fees. (Docket Entry No. 18). Thompson's motion to set aside the default and default judgment followed.

## II. The Applicable Legal Standards

### A. The Legal Standard for Setting Aside a Default Judgment

Thompson has moved under Rule 55(c) of the Federal Rules of Civil Procedure, which allows the court to "set aside a default judgment under Rule 60(b)." FED. R. CIV. P. 55(c). Rule 60(b), in turn, allows the court to "relieve a party . . . from a final judgment, order, or proceeding" if, among other things, "the judgment is void." FED. R. CIV. P. 60(b)(4). A judgment is "void" if "the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 735 (5th Cir. 1984) (quotation marks omitted); *see generally United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010) (collecting authorities). Granting a Rule 60 motion is ordinarily left within the district court's discretion, but "[w]hen . . . the motion is based on a void judgment under rule 60(b)(4), the district court has no discretion—the judgment is either void or it

3

is not." *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986). For this reason, "there is no time limit on Rule 60(b)(4) motions." *Jackson v. FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002). "If the judgment is void, the district court *must* set it aside." *Id.* at 524 (quotation marks omitted). Rule 60(b)(4) "embodies the principle that in federal court, a 'defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds.'" *Id.* at 522 (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982)).

### B. Rule 12(b)(2)

Thompson has also moved to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure. When a nonresident defendant challenges personal jurisdiction, the plaintiff has the burden of demonstrating facts sufficient to support jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* A plaintiff must make a *prima facie* showing that the defendant is subject to personal jurisdiction; "[p]roof by a preponderance of the evidence is not required." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *D.J. Invs. Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985)). At the motion stage, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.*

### C. The Legal Standard for Personal Jurisdiction

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the

4

Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The Texas long-arm statute extends to the limits of due process. *Id.* To satisfy due process, the plaintiff must demonstrate "(1) that the non-resident purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation omitted).

"A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [he] should reasonably anticipate being haled into court there.'" *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against him when his contacts with the state are so "'continuous and systematic' as to render [him] essentially at home in the forum State." *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011). RCT and Commercial Funding do not rely on general jurisdiction. The only issue is specific jurisdiction.

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* at 2851 (citation omitted). The question is "whether there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 2854 (quoting *Hanson*

5

*v. Denckla*, 357 U.S. 235, 253 (1958) (first alteration in original)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

A defendant's suit-related conduct creates a sufficient relationship with the forum state only if the relationship arises out of "contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1122 (quoting *Burger King*, 471 U.S. at 475). The limits on a state's "adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of the plaintiff[] or third parties." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Id.* (quotation marks omitted). "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). The issue is the defendant's contacts "with the forum State itself," as opposed to contacts with "persons who reside there." *Id.* (citations omitted).

The Supreme Court has emphasized that a "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* "[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the

6

plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* (quotation marks omitted); *see AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 787 (S.D. Tex. 2012) ("[S]pecific jurisdiction may not be based on the mere fortuity that a plaintiff is a Texas resident.").

A four-step inquiry determines whether a court may exercise specific jurisdiction over a defendant. First, the plaintiff must show that "there are sufficient (i.e. not random, fortuitous, or attenuated) pre-litigation connections between the nonresident defendant and the forum." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, — F.3d —, —, 2015 WL 4979009, at *7 (5th Cir. Aug. 21, 2015) (quotation marks omitted) (alterations omitted). Second, the plaintiff must show that "the connection has been purposefully established by the defendant." *Id.* Third, the plaintiff must show that "the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *Id.* And fourth, once a plaintiff has satisfied these three elements, "the defendant can then defeat the exercise of specific jurisdiction by showing . . . that it would fail the fairness test, i.e., that the balance of interest factors show that the exercise of jurisdiction would be unreasonable." *Id.*

### III. Analysis

RCT and Commercial Funding assert that specific jurisdiction over Thompson is proper because he "purposefully directed his activities to Texas by contracting with Texas residents, corresponding with Texas residents and receiving funds from Texas residents by way of an account

located in Texas." (Docket Entry No. 22 at p. 5). Accepting the complaint's well-pleaded allegations, RCT and Commercial Funding have not carried their burden of showing that Thompson had the minimum contacts with Texas necessary to create specific personal jurisdiction over him.

The fact that Thompson contracted with two corporate entities headquartered in Texas does not show that he is subject to specific personal jurisdiction in Texas. "[M]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

The plaintiffs point to emails between Thompson and counsel for RCT and Commercial Funding, contending that these written communications "reflect Mr. Thompson's knowledge of this suit and various stages leading to judgment." (*See* Docket Entry No. 22, Ex.2). A plaintiff must demonstrate "sufficient . . . *pre-litigation* connections between the nonresident defendant and the forum." *Int'l Energy Ventures*, 2015 WL 4979009, at *7 (emphasis added). RCT and Commercial Funding rely on emails exchanged between Thompson and the attorney they retained to assist in recovering their $350,000 deposit, including by filing this action, after the dispute arose.

RCT and Commercial Funding also argue that Thompson's receipt of their escrow deposit establishes personal jurisdiction over him in Texas. But Thompson did not transfer the funds into the escrow account. Instead, RCT and Commercial Funding allege that RCT arranged the wire transfer from its bank in Texas to the escrow account at the Canadian bank. (Docket Entry No. 1 at p. 4; Docket Entry No. 22, Ex.1-C; Docket Entry No. 22, Ex. 1 at ¶ 11). RCT and Commercial Funding further allege that Thompson released the funds from the escrow account in Canada to Quad, which is a Canadian company located in Canada. (Docket Entry No. 1 at p. 4; Docket Entry No. 22, Ex. 1 at ¶ 12). Because specific jurisdiction turns on the defendant's contacts with the

forum—not the plaintiff's—the receipt by the Canadian bank of a single wire transfer from a Texas bank, and Thompson's subsequent release of those funds from the Canadian bank to a Canadian company, do not show personal jurisdiction over Thompson in Texas. *See, e.g., Resolution Trust Corp. v. First of Am. Bank*, 796 F. Supp. 1333, 1336 (C.D. Cal. 1992) (courts generally "have declined to find jurisdiction based on limited technological or financial interaction with a non-forum bank" and collecting cases); *cf. Harris v. Lloyds TSB Bank, PLC*, 281 Fed. App'x 489, 495 (6th Cir. 2008) (unpublished) ("The wire transfers accepted or confirmed by the [defendant] from [the forum state] . . . cannot constitute purposeful availment, because none of those transfers were initiated by [the defendant].").

RCT and Commercial Funding cite several cases discussing the "effects test" from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), a defamation case. (Docket Entry No. 22, at p. 5–6). "'Effects' jurisdiction is premised on the idea that an act done outside a state that has consequences or effects within the forum state can suffice as a basis for personal jurisdiction if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008). "Such jurisdiction is rare." *Id.* "That the 'effects' test of *Calder* applies outside of the defamation context is clear; but the effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997). Otherwise, "a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001) (per curiam). Because RCT and

9

Commercial Funding have not shown that Thompson "purposefully availed [himself] of the privilege of conducting activities in Texas and invoked the benefits and protections of Texas's laws," applying the effects test does not show personal jurisdiction over Thompson in Texas. *Id.* at 869.

The fact that the escrow agreement contains a choice-of-law clause specifying that the laws of the Province of Ontario govern the agreement is an additional factor cutting against finding personal jurisdiction in Texas. *See Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) (a choice-of-law clause is relevant to the personal-jurisdiction analysis).

## IV. Conclusion

Thompson's motion to set aside the default judgment, (Docket Entry No. 19), is granted. Thompson's motion to dismiss for lack of personal jurisdiction, (*Id.*), is also granted.

A district court "may initiate relief under Rule 60(b) on its own motion." *E.g., Hayes v. Koch Entm't, L.P.*, 292 Fed. App'x 389, 390 (5th Cir. 2008) (per curiam). The reasons that led the court to set the default judgment against Thompson aside would appear to apply against Quad Ocean as well. No later than September 21, 2015, RCT and Commercial Funding must submit a filing showing why the default judgment against Quad should not be set aside, and their claims against Quad should not be dismissed, for lack of personal jurisdiction.

SIGNED on September 3, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge